H. H. COOR v. S. O. ROGERS.

*Stock Law—Burden of Proof.*

1. Where the statute makes it the duty of the County Commissioners to build and keep in repair the fence around the territory embraced by the stock law, an owner of stock who resides outside of such territory, is not liable to have his stock impounded if found within such territory, unless the County Commissioners have kept the fence in good repair.

2. In such case the presumption is that the fence is in good order, and the burden of showing the contrary is on the party alleging it.

CIVIL ACTION, tried before *Philips, Judge,* and a jury, at September Term, 1886, of WAYNE Superior Court.

This action, begun before a justice of the peace, was brought to recover possession of four hogs, which the plaintiff alleged to be his property, and he availed himself in the course of the action of the provisional remedy of claim and delivery.

The following is so much of the case stated on appeal, as it is needful to set forth here:

"It was admitted that the stock had been taken up by the defendant while trespassing upon and doing damage to his crops, which were situated within the stock law territory, described in chapter 115, laws of 1885; that all the requirements necessary to give force and validity to this act had been complied with, and that the act was in full force over said territory, and that the defendant had caused the stock

to be duly advertised and registered, had impounded the same, and had complied with all the other requirements of the act respecting said stock, and that the defendant resided within said territory, and that the plaintiff owned land, resided and farmed, and kept his stock on his farm outside of the territory. It is further admitted that the stock in question was the property of the plaintiff, and that he had turned them out to graze on his own lands.

The plaintiff testified, that after he had turned them out they had been lost, and that he found them in the defendant's stable, within said territory, and that he then demanded them of the defendant; that he asked him what damage they had done; that he said he did not know; that he had got some parties, four or five men, to help him get them up, and that was worth fifty cents apiece; that said stock had eaten, after he took them up, one half bushel of corn, and had damaged his wheat and turnips; that witness asked him if he wanted a committee to assess his damages, and he said he didn't know; that witness told defendant he knew the stock was his, and if he didn't give them up, witness would get them; that witness asked defendant what he, witness, should pay him, to which he made no answer, and the witness then said to him, 'you wish me to sell the hogs, don't you? You know you tried to buy them, and are going to have them, anyhow.' The witness further testified, that he was then able to pay all costs, charges and damages due the defendant, having in his pocket at the time about fifteen or twenty dollars in money.

Plaintiff then offered to prove by himself, that the gate on the public road leading from where the plaintiff had turned out his stock into said territory, required to be kept by the act on the line of said territory where it is crossed by the road, was at the time down, and had been so for a long time, and that the fence required by the act to be kept up around said territory, was down for from one half to three fourths

of a mile, and had been so for some time, near the place where the hogs were turned out, and that said gate was three or four hundred yards from plaintiff's lands where he had turned out the hogs. To this evidence the defendant objected, the objection was sustained by the Court, and the plaintiff excepted.

The Court charged the jury, that the law allowed the defendant to retain the possession of the property until the charges for taking up and impounding the same under the statute were paid, and on failure of the plaintiff to pay these charges, the defendant is entitled to a verdict, unless the plaintiff offered to pay them, and the defendant refused to receive them. Plaintiff excepted.

There was a verdict and judgment for the defendant, and the plaintiff having excepted, appealed to this Court.

*Messrs. E. R. Stamps* and *C. B. Aycock*, for the plaintiff.
No counsel for the defendant.

MERRIMON, J., (after stating the facts). The statute (Acts 1885, chs. 115, 192 and 287,) provide that live stock, including swine, shall not be allowed to run at large within the limits of Goldsboro township, in the county of Wayne, and in additional designated adjoining territory therein named. To this end, it is likewise provided further, that certain commissioners named shall cause to be built a sufficient fence around the territory mentioned, and gates erected across all the highways leading into the same, for the purpose of preventing live stock outside of such enclosure from intruding upon and running at large inside of it. It is expressly provided further, that the statute referred to shall not take effect and authorize the taking and impounding of such stock, and the collection of fines and costs in respect thereto, until the fence provided for shall be built, and notice thereof given as prescribed.

It is further provided : " After said committee shall have reported the completion of said fence, said fence shall be under the control and management of the board of commissioners, and they shall discharge, with reference to said fence and the territory therein embraced, all the duties prescribed in chapter twenty of *The Code*, relating to territory where a stock law prevails." And the statute (*The Code*, §2826, vol. 2, ch. 20,) thus referred to, provides that " the board of commis· sioners of the county may    *    *    *    make all regulations and do all other things necessary to carry into effect the provisions of this chapter relating to the stock law."

It thus plainly appears, that the statutes first above cited, were to have effect only when the fence should be built, and that there was no purpose to prevent live stock from running at large ouside of the territory enclosed. It also appears, if not in terms, certainly by reasonable and necessary implication, that the county commissioners shall keep the fence in reasonable repair, and make appropriate regulations ; that is, appoint suitable agents, and raise money as allowed by law, and do other needful things for that purpose. The nature of the purpose suggests and requires that the fence shall be kept continually in repair, in order that the law may be continually operative and effectual.

Generally, such stock are allowed to run at large in unenclosed territory. If the fence is allowed to become ruinous and the gates to be thrown down and remain so, then cattle may wander inside of the enclosure unrestrained, and if they should, in such case, the owner thereof would not be liable to have them taken up and impounded, nor would he be liable for charges and costs in respect thereto, because the statute does not create such liability when the fence is so out of repair. When this is permitted, the county commissioners and their agents are in default, and not the owner of the stock straying at large; the owner is not bound to keep his stock confined, and thus keep them outside of the

enclosure, nor to keep the fence in repair. The statute, properly interpreted, does not so require, and it would be palpable injustice to require the owner of stock running at large, to be liable for costs and charges because of no default of his own, but that of the county commissioners or their negligent agents. The liability would not arise unless the fence or gate where the stock passed inside the enclosure was in reasonable repair. The presumption of fact is, that the fence is in repair, and the burden is on the party charged to show the contrary. If the fence is in repair, and vicious, mischievous stock shall break through or get over it, then the owner would be liable. Such animals should not be allowed to run at large.

If the fence or gates shall be out of repair, and as a consequence, stock shall wander inside of the enclosure, they should be gently driven outside, without injury, or the owner should be notified to take them out; and this is so, because of the default of the county commissioners, or their agents, and the owners are not in default.

It is important that the fence and gates shall be kept in repair. Otherwise, each owner of land inside of the enclosed territory will be exposed to annoyance and injury from intruding stock that cannot be taken up and impounded at the cost of the owners thereof. Every such owner of land has therefore a direct interest that prompts him to see that the county commissioners and their agents discharge their duties in respect to such fence and gates faithfully.

We are, therefore, of opinion that the Court erred in refusing to admit the evidence offered by the appellant on the trial in respect to the alleged ruinous condition of the fence and gate.

The instructions given the jury were likewise erroneous. The Court should have told them in substance, that if the fence and gate were in reasonable repair, and in that case, the hogs got through or over them, the plaintiff, although

the owner of them, would not be entitled to have possession of them until he had first paid the costs and charges of taking them up and impounding them; that, however, if the fence and gate were out of repair, as alleged by the plaintiff, then he would be entitled to recover the possession of his hogs, although he had not paid the costs and charges demanded by the defendant.

The plaintiff is entitled to a new trial, and we so adjudge. To that end, let this opinion be certified to the Superior Court according to law.   It is so ordered.

Error.                                                    Reversed.